# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ANTHONY MARROQUIN,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM GORE et al.,<br><br>Respondents. | Case No.: 3:18-cv-00623-DMS-RBM<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: MOTION TO DISMISS FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. 28.] |

## I. INTRODUCTION

Petitioner FRANK ANTHONY MARROQUIN ("Petitioner"), an individual proceeding *in pro per*, has filed a First Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") (Doc. 4.) He seeks relief from his March 2018 probation revocation in San Diego County Superior Court Case No. S250718DV. (*Id.,* at 1.) In response, Respondent WILLIAM GORE ("Respondent") has filed a Motion to Dismiss on the grounds that Petitioner has failed to exhaust his available state court remedies. (Doc. 28.) Petitioner opposes the Motion to Dismiss and argues that he has exhausted his available state court remedies. (Doc. 34.) The matter was referred to the undersigned judge for Report and Recommendation Pursuant to 28 U.S.C. § 636(b)(1)(B)

and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the pleadings and supporting documents, this Court respectfully recommends the Motion be **GRANTED**, and the Petition be **DISMISSED, WITHOUT PREJUDICE**. In the alternative, the Court respectfully recommends that the Petition be **DENIED** on the merits, because Petitioner has failed to raise a colorable federal claim. Finally, it is further recommended that a *Rhines* stay **NOT ISSUE**, for the reasons discussed below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In July 2011, Petitioner's wife, Marianne Marroquin, was granted a Domestic Violence Criminal Protective Order from the San Diego County Superior Court, South County Regional Center, in Chula Vista, California. (Doc. 4, at 18.) Approximately one month later, on August 23, 2011, Petitioner contacted his wife via telephone and sent her an email containing a Microsoft Excel spreadsheet. (Doc. 4, at 18; Doc. 36-6, at 33-34.) Later that day, Petitioner was arrested and charged with two counts of violating California Penal Code section 273.6(a). (Doc. 36-6, at 33-34, San Diego County Superior Court Case # S250718DV.) The Complaint alleged that "on or about August 23, 2011, FRANK MARROQUIN did willfully, unlawfully and knowingly violate a court order obtained to prevent domestic violence and disturbance of the peace[.]" (*Id.,* at 33-34.)

On August 26, 2011, Petitioner appeared in custody to be arraigned on the Complaint; he was appointed counsel, pleaded not guilty, and remanded to the custody of the San Diego County Sheriff on ten thousand dollars bail. (Doc. 36-6, at 32.) Seven days later on September 2, 2011, Petitioner entered a guilty plea to Count 1 of the Complaint, and Count 2 was dismissed. (*Id.,* at 25-28.) The imposition of sentence was suspended and Petitioner was granted probation for a period of three years. (*Id.*) Petitioner's probation terms required him to (1) enroll in and complete a fifty-two week domestic violence recovery program; (2) comply with the restrictions of a new criminal protective order; (3) relinquish any firearms in his possession; and (4) pay several fines and fees, which were stayed pending the completion of the domestic violence recovery program. (*Id.*)

Over the course of the next seven years, Petitioner repeatedly failed to appear at his probation review hearings. (*See* Doc. 36-6.) On eleven occasions, the Superior Court summarily revoked Petitioner's probation and issued bench warrants, which led to Petitioner's arrest. (*Id.*) When Petitioner did appear at the hearings, he failed to show proof of his enrollment in the domestic violence recovery program. (*Id.*) On June 6, 2014, Petitioner appeared for another review hearing and had still failed to enroll in a domestic violence recovery program. (Doc. 36-6, at 5.) When Petitioner admitted to violating his probation terms, the Court sentenced Petitioner to ninety days in custody, suspended the execution of that sentence, and ordered Petitioner to re-enroll in a domestic violence recovery program by September 12, 2014. (*Id.*) On September 12, 2014, Petitioner again failed to appear: the Court summarily revoked his probation and issued a bench warrant in the amount of ten thousand dollars. (Doc. 36-6, at 4.)

On January 5, 2018, Petitioner was arrested on the outstanding bench warrant issued when he failed to appear for his prior review hearing in 2014. (Doc. 4, at 18, Doc. 36-6, at 4.) Petitioner posted bond and retained private counsel to appear on his behalf at the next hearing, scheduled for February 16, 2018. (Doc. 36-6, at 3, Doc. 4, at 16.) On February 16, 2018, the Superior Court set a probation revocation hearing for March 16, 2018, required Petitioner's personal appearance at that hearing, and gave Petitioner a final chance to enroll in the domestic violence recovery program. (Doc. 36-6, at 4, Doc. 4, at 16.) When Petitioner failed to appear on March 16, 2018, the Court revoked Petitioner's probation and issued a new bench warrant in the amount of fifteen thousand dollars. (Doc. 36-6, at 2; Doc. 4, at 1.) On March 27, 2018, Petitioner filed a Petition for a Writ of Habeas Corpus in this Court. (Doc. 1.) On July 19, 2018, the San Diego Superior Court terminated Petitioner's probation. (Doc. 36-6, at 1.) According to the lodgments filed by Respondent, Petitioner may have served less than forty-five actual days in custody prior to the termination of his probation. (Doc. 36-6, at. 2, 3, 5, 51.)

On May 2, 2018, Petitioner filed his First Amended Petition for a Writ of Habeas Corpus in this Court, claiming that his First, Fifth, and Sixth Amendment rights were

violated. (Doc. 4.) He claims he appealed the Superior Court's March 16, 2018 probation revocation to the California Court of Appeal. (*Id.*) He lists the case number "250718," which is the same number sequence as his Superior Court case. (Doc. 36-6; Doc. 4.) He alleges that the grounds he raised on appeal were "The California Constitution." (Doc. 4.) He lists the result of the appeal as "improper format." (*Id.*) Petitioner further alleges he petitioned the California Supreme Court to review the revocation; he again lists the case number as 250718; alleges the grounds raised on review were the California Constitution; and describes the result of the review as "improper format and content." (*Id.*)

Respondent has filed a Motion to Dismiss, arguing that Petitioner's claims are wholly unexhausted. (Doc. 28.) After reviewing the Petition (Doc. 4), the Opposition (Doc. 34), and Respondent's Declaration (Doc. 36-7), it appears that neither the appeal nor the petition for review were ever filed; instead, they were both rejected for failure to comply with filing requirements. (Doc. 4, at 2; Doc. 34, at 14-16.) A search for Petitioner's name in the California Appellate Courts Case Information website yielded no returns for filings in either the California Courts of Appeal or the California Supreme Court. (Doc. 36-7, at 2.)

### III. PETITIONER'S CLAIMS ARE UNEXHAUSTED

Habeas petitioners who wish to challenge either their state court conviction or the length of their confinement in state prison must first exhaust state judicial remedies. 28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987). The exhaustion requirement assures the state courts of the "initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. at 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). To exhaust a habeas claim properly, a petitioner must present his claim to the California Supreme Court on (1) direct review (e.g., via a petition for review) or (2) collateral review (e.g., via a petition for a writ of habeas corpus). CALIFORNIA CRIMINAL LAW PRACTICE SERIES: APPEALS AND WRITS IN CRIMINAL CASES § 4.25 (CEB 1982 & Supp. 1998); *see Reiger v. Christensen*, 789 F.2d 1425, 1427 (9th Cir. 1986).

To satisfy the exhaustion requirement, a petitioner must "'fairly present[]' his federal claim to the highest state court with jurisdiction to consider it, or . . . demonstrate[] that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted). To "fairly present" a claim, a petitioner must first provide the state courts with a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connar*, 404 U.S. 270, 276-77 (1971)). The substance of the claim is fairly presented where the pleading states the federal legal theory or basis of the claim and the facts entitling the Petitioner to relief. *See Picard v. Connor,* 404 U.S. at 277–78. The petitioner must have specifically told the state court he was raising a federal constitutional claim. *Duncan v. Henry,* 513 U.S. 364, 365-366 (1995). Furthermore, the way the claim is stated in the federal habeas petition must be the "substantial equivalent" of how it was presented in the state courts. *Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982); *Schiers v. California*, 333 F.2d 173, 174 (9th Cir. 1964).

"The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997); see *Cartwright v. Cupp,* 650 F. 2d 1103, 1104 (9th Cir. 1981) ("While Cartwright alleges that he has exhausted his state court remedies, there is nothing in the record to show that he sought review in the Oregon Supreme Court. He recites only that he appealed to the Oregon Court of Appeals. The district court should have dismissed the petition for failure to exhaust.")

Here, the record shows that Petitioner has failed to exhaust available state court remedies. Petitioner claims that he filed a direct appeal of the probation revocation to the California Court of Appeal, and a Petition for Review to the California Supreme Court. (Doc. 4.) However, Petitioner never fairly presented his claims to either of those judicial bodies. Petitioner claims he raised "The California Constitution" in his filings as a ground for relief in both the California Court of Appeal and the California Supreme Court. (Doc. 4.) But the California Constitution is not a federal legal theory, and raising it does not specifically tell the state courts that Petitioner is raising a federal constitutional claim.

Further, the California Constitution is a different theory than—and thus not the substantial equivalent of—those alleged in the Petition, i.e. the First, Fifth, and Sixth Amendments to the United States Constitution. And most importantly, "federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010), *citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, (1990)); *see* 28 U.S.C. § 2254(a).

Furthermore, it does not appear that Petitioner actually filed a petition with either the California Courts of Appeal or the California Supreme Court. The case number listed in the Petition is 250718 for both purportedly-filed petitions—the same case number that appears on the original criminal complaint and state court minute orders. (Docs. 4 and 36-6.) According to an exhibit included with Petitioner's Opposition, he filed a "case initiation form," a "Petition for Writ," and three "Requests for Dismissal" with the Fourth District California Court of Appeal. (Doc. 34, at 15.) Petitioner apparently paid a total of $21.00 in filing fees and was even assigned a temporary case number of TEMP-PNJY4N1C. (*Id.*) However, the filings were rejected because Petitioner failed to comply with format and content rules. (*See* Docs. 4 and 34.) Further, Petitioner's name does not appear in database searches of filed Petitions in any of the California Appellate Districts. (Doc. 36-7.)

Petitioner's Opposition contains a second exhibit purporting to be an automatic reply email from TrueFiling, an online filing service used by the California Supreme Court. (Doc. 34, at 16.) The email indicates that Petitioner attempted to file a Petition for Writ of Habeas Corpus with the California Supreme Court, and was assigned a temporary case number: TEMP-PE041QWR. (Doc. 34, at 16.) However, the filing was rejected as "not in compliance" because Petitioner failed to submit the document with the required bookmarks, consecutively paginate the document, and include a required filing form that he was given. (*Id.*) Further, Petitioner's name does not appear in database searches of filed Petitions in the California Supreme Court. (Doc. 36-7.) Therefore, Petitioner never properly filed his papers with the California Courts of Appeal or the California Supreme Court.

6

3:18-cv-00623-DMS-RBM

In state court, Petitioner did not plead claims that were substantially equivalent to the claims in his federal Petition. He did not specifically tell the state courts he was raising a federal constitutional claim. He thereby deprived the state court of a fair opportunity to apply controlling legal principles to his claim. In fact, Petitioner never even filed the pleadings in the first place. Therefore, Petitioner failed to fairly present his claims to the state court. Further, the record does not show that that no state remedy remains available. *See Johnson v. Zenon*, 88 F.3d at 829. Petitioner has not properly exhausted his claims. Therefore, it is respectfully recommended that Respondent's Motion to Dismiss should be **GRANTED,** and the Petition **DISMISSED, WITHOUT PREJUDICE**, to allow Petitioner the opportunity to return to state court and exhaust his remedies.

## IV. A *RHINES* STAY IS NOT RECOMMENDED IN THIS CASE

Rather than dismiss the Petition without prejudice and allow Petitioner to re-file, the Court could stay the Petition and hold habeas proceedings in abeyance until Petitioner has exhausted State court remedies pursuant to *Rhines v. Weber,* 544 U.S. 269 (2005). However, a "*Rhines*" stay is not recommended in this case, as discussed below.

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applied a one-year statute of limitations for bringing a habeas corpus petition in federal court. *See* 28 U.S.C. § 2244(d). But "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and [*Rose v.*] *Lundy*'s dismissal requirement[,]" habeas petitioners who have failed to exhaust state court remedies can effectively be denied the opportunity for collateral review in federal court. *Rhines v. Weber,* 544 U.S. at 275. Therefore, when presented with "mixed petitions," i.e. those that contain "some claims that have been exhausted in the state courts and some that have not," federal courts have discretion to implement a so-called "stay-and-abeyance" procedure. *Id.* The Ninth Circuit has found that the difference between mixed petitions and fully unexhausted petitions is not sufficiently meaningful to warrant different treatment, such that "a district court has the discretion to stay and hold in abeyance *fully* unexhausted petitions" as well. *Mena v. Long*, 813 F. 3d 907, 912 (9th Cir. 2016) (emphasis added). "Under this procedure, rather than

dismiss the mixed petition pursuant to *Lundy,* a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Rhines v. Weber,* 544 U.S. at 275-276.

However, the stay and abeyance procedure "should be available only in limited circumstances[,]" whether the petition is "mixed" or fully unexhausted *Rhines v. Weber,* 544 U.S. at 277; *see also Mena v. Long*, 813 F. 3d 907, 912 (9th Cir. 2016). If employed too frequently, the procedure has the potential to undermine AEDPA's dual purposes to "reduce delays in the execution of state and federal criminal sentences" and streamline federal habeas proceedings. *Rhines v. Weber,* 544 U.S. at 276. The district court has the discretion to hold a petition in abeyance "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 277; *see also Mena v. Long*, 813 F. 3d. at 912.

This case does not present the "limited circumstances" under which a *Rhines* stay should issue. Here, Petitioner has not shown: (1) good cause for his failure to exhaust state court remedies; (2) that his unexhausted claims are potentially meritorious; and (3) that he did not engage in intentionally dilatory litigation tactics. Additionally, the one-year AEDPA statute of limitations started to run under 28 U.S.C. § 2244(d)(1)(A) when the time expired for Petitioner to appeal the March 2018 revocation he challenges in this action: it has thus not expired. Therefore, it is respectfully recommended that the Court decline to exercise its discretion, and that a *Rhines* stay **NOT ISSUE**.

## V. PETITIONER FAILS TO RAISE A COLORABLE FEDERAL CLAIM

Even though the Court can dismiss the Petition solely because Petitioner failed to exhaust state court remedies, the Court can instead deny the application on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state...." 28

U.S.C. § 2254(b)(2). But a district court may only deny a fully unexhausted habeas application "…when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F. 3d 614, 624 (9th Cir. 2005) ("the principle of comity counsels in favor of a standard that limits a federal court's ability to deny relief under § 2254(b)(2) to circumstances in which it is perfectly clear that the petitioner has no hope of prevailing. A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted.")

### 1. First ground for relief: the First Amendment right to free speech

Petitioner claims that he was charged with a violation of California Penal Code section 273.6(a) in violation of the First Amendment right to free speech. (Doc. 4, at 6.) The First Amendment to the United States Constitution provides: "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. "[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571, and n.2 (1942). "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate *breach of the peace*. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.* at 572 (emphasis added) (footnotes omitted). "'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.'" *Id., citing Cantwell v. Connecticut*, 310 U.S. 296, 309, 310 (1940).

California Penal Code section 273.6(a) punishes certain unprotected speech as a criminal act. It reads, in pertinent part: "Any intentional and knowing violation of a

protective order, as defined in Section 6218 of the Family Code,... is a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000) or by imprisonment in a county jail for not more than one year, or by that fine and imprisonment." Cal. Penal Code § 273.6(a). California Family Code section 6218 defines "protective order" as a restraining order that, among other things, "enjoins specific acts of abuse as described in Family Code section 6320."

Family Code section 6320 permits a state court to "issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating,...falsely personating,...harassing, telephoning, including, but not limited to, making annoying telephone calls...destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or *disturbing the peace of the other party*..." (emphasis added). This broad prohibition is in keeping with the notion that domestic violence is not limited to the infliction of physical injuries, but can include psychological and emotional abuse. *See Pugliese v. Superior Court*, 146 Cal. App. 4th 1444, 1452 (Cal. App. 2d. Dist. 2007). The physical act of speaking can be an act of domestic abuse that "disturbs the peace" of the victim. That speech can be enjoined, and a violation of such an injunction is a criminal act. In that limited way, California Penal Code section 273.6(a) criminalizes speech. But when speech constitutes domestic violence, it is not protected by the Constitution. *See Chaplinsky v. State of New Hampshire*, 315 U.S. at 572.

Marianne Marroquin sought, and was granted, a domestic violence protective order that prohibited Petitioner from engaging in the abusive conduct identified in California Family Code section 6320. When Petitioner violated the order by contacting Marianne Marroquin, he was arrested and charged with two violations of California Penal Code section 273.6. (Doc. 34; Doc. 36-6, at 34.) It was specifically alleged that Plaintiff "did willfully, unlawfully, and knowingly violate a court order obtained to prevent domestic violence and *disturbance of the peace*...." (Doc. 36-6, at 34 (emphasis added).)

Abusive speech, especially speech that "breaches the peace" has no constitutional protection. "[T]he statute [under which Petitioner was charged] does no more than prohibit...words whose speaking constitute a breach of the peace by the speaker." *See Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 573 (1942). Petitioner's conviction under California Penal Code section 273.6(a) does not violate the principles of the First Amendment. Therefore, Petitioner fails to state a colorable claim that his First Amendment rights were violated.

**2. Second ground for relief: Fifth Amendment prohibition against double jeopardy**

Petitioner claims that he was sentenced twice and arrested eleven times, in violation of the Fifth Amendment's prohibition of double jeopardy. (Doc. 4, at 7.) However, these allegations do not raise a colorable claim of a constitutional violation. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *United States v. DiFrancesco,* 449 U.S. 117, 127-128 (1980), citing *Green v. United States,* 355 U.S. 184, 187-188 (1957); *see also Serfass v. United States*, 420 U.S. 377 387-388 (1975); *Crist v. Bretz*, 437 U.S. 28, 35 (1978).

The guarantee against double jeopardy "has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *United States v. DiFrancesco,* 449 U.S. at 129, (citing *North Caroline v. Pearce,* 395 U.S. 711,

717 (1969)); *see Illinois v. Vitale*, 447 U.S. 410, 415 (1980). However, the guarantee against double jeopardy does not protect against the revocation of probation and the imposition of imprisonment. *United States v. DiFrancesco,* 449 U.S. at 129; *see Thomas v. United States*, 327 F.2d 795 (10th Cir. 1964).

Here, the record shows that Petitioner pleaded guilty to a violation of California Penal Code section 273.6(a) in 2011. (Doc. 36-6, at 25-28.) The imposition of sentence was suspended and Petitioner was granted probation for a period of three years. (*Id.*) However, Petitioner failed to comply with the terms of his probation, resulting in several revocation hearings. (Doc. 36-6.) In 2014, at one of these revocation hearings, Petitioner admitted he was in violation of his probation. (*Id.* at 5). The Court revoked Petitioner's probation and sentenced Petitioner to 90 days in custody—but suspended the execution of that sentence, giving Petitioner a final chance to enroll in the domestic violence recovery program. (*Id.*)

During Petitioner's probationary period, it appears that he failed to comply with the terms of his probation eleven times, resulting in multiple revocations and reinstatements. (Doc. 36.) There is no question that Petitioner was incarcerated several times during his probationary period. But none of those occasions was a second punishment; rather, Petitioner was held in custody after the issuance of several bench warrants for multiple failures to appear at his review hearings. Although it is unclear whether Petitioner actually served his full sentence, whether the sentence remained suspended, or whether his probation was terminated unsuccessfully (*see Id.*, at 2, 3, 5, 51), Petitioner's Fifth Amendment rights were not violated. Petitioner was not prosecuted a second time after acquittal; he was not prosecuted a second time after conviction; and he was not punished twice for the same offense. He was granted probation and found in violation. This is not a violation of the Fifth Amendment guarantee against double jeopardy. Therefore, Petitioner fails to raise a colorable claim that his Fifth Amendment rights were violated.

///

///

### 3. Third ground for relief: the Sixth Amendment right to a speedy trial

Petitioner claims that the San Diego Superior Court violated his Sixth Amendment right to a speedy trial. (Doc. 4, at 8.) The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const. amend. VI. "An accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy trial' if it has, in fact, prosecuted his case with customary promptness." *Doggett v. U.S.*, 505 U.S. 647, 651-652 (citing *Barker v. Wingo*, 407 U.S. 514, 530-531 (1972)).

However, the Sixth Amendment's speedy trial guarantee is available to an accused only in "criminal prosecutions." U.S. Const. amend. VI. It "does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges. *Betterman v. Montana*, 136 S. Ct. 1609, 1612 (2016). "Probation revocation... is not a stage of a criminal prosecution[.]" *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). A probationer is not "'prosecuted' or 'brought to trial' on the criminal offense for which he initially was sentenced to probation, since he already will have been tried and convicted for that offense." *Carchman v. Nash*, 473 U.S. 716, 725 (1985).

Petitioner fails to allege a colorable violation of the Sixth Amendment. Petitioner was charged with two violations of California Penal Code section 273.6(a) on August 26, 2011. (Doc. 36-6, at 32-35.) Seven days later on September 2, 2011, he pleaded guilty to one of the charges, was convicted, and was sentenced to a term of probation. (*Id.* at 25-29.) On February 16, 2018, after the issuance of eleven bench warrants over a seven-year period, the San Diego Superior Court conducted a hearing to review Petitioner's compliance with his probation terms; when the Court learned that Petitioner had failed to comply, the Court set a revocation hearing on March 16, 2018, thirty days later. (*Id.*, at 3.) At that hearing, the Court revoked Petitioner's probation. (*Id.* at 2.) At no time during the pendency of Petitioner's state court case—pre-conviction or otherwise—were his speedy trial rights violated. Therefore, Petitioner fails to raise a colorable claim that his Sixth

Amendment rights were violated.

Accordingly, the undersigned Magistrate Judge alternatively recommends the Petition be **DENIED ON THE MERITS**, irrespective of Petitioner's failure to exhaust state court remedies.

## V. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Dana M. Sabraw under 28 U.S.C. § 636(b)(1)(B) and Rule 72.1(c)(1)(d) of the Local Civil Rules of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order approving and adopting this Report and Recommendation, and: (1) directing that Judgment be entered **GRANTING** Respondents' Motion to Dismiss without prejudice; or alternatively, (2) **DENYING** the Petition on the merits. **IT IS FURTHER RECOMMENDED** that a *Rhines* stay **NOT ISSUE** for the reasons discussed above.

**IT IS ORDERED** that no later than **February 28, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 1, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F. 3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F. 2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATE: January 29, 2019

HON. RUTH BERMUDEZ MONTENEGRO
United States Magistrate Judge

14

3:18-cv-00623-DMS-RBM